MATTHEW C. MACLEAR, SBN 209228
Email: mcm@atalawgroup.com
ERICA A. MAHARG, SBN 279396
Email: eam@atalawgroup.com
AQUA TERRA AERIS (ATA) LAW GROUP
4030 Martin Luther King, Jr. Way
Oakland, CA 94609
Telephone: (415) 568-5200

Attorneys for Plaintiffs
SAN JOAQUIN RAPTOR/WILDLIFE RESCUE CENTER;
CENTRAL VALLEY SAFE ENVIRONMENT NETWORK;
PROTECT OUR WATER

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JOAQUIN RAPTOR/WILDLIFE RESCUE CENTER a non-profit corporation, CENTRAL VALLEY SAFE ENVIRONMENT NETWORK, a non-profit association, and PROTECT OUR WATER, a non-profit association,<br><br>                    Plaintiffs,<br><br>    vs.<br><br>ARDAGH GLASS INC., a corporation and ARDAGH GROUP S.A., a corporation,<br><br>                    Defendants. | Case No. 1:22-CV-00595-JLT-SKO<br><br>**[~~PROPOSED~~] CONSENT DECREE**<br><br>Action Filed: May 18, 2022 |

## Consent Decree

**WHEREAS,** San Joaquin Raptor/Wildlife Rescue Center ("SWR"/WRC") is a 501(c)(3) non-profit public benefit corporation organized under the laws of the State of California;

**WHEREAS,** SWR/WRC's organizational purpose is protecting and preserving wildlife habitats and the environment, including combating pollution of the air and waterways in the San Joaquin Valley;

**WHEREAS,** Protect Our Water ("POW") is an unincorporated association formed for the purpose of increasing the awareness, appreciation, and preservation of the environmental resources within the Central Valley region of California;

**WHEREAS,** Central Valley Safe Environment Network ("CVSEN") is a coalition of organizations and individuals throughout the San Joaquin Valley that is committed to the ecological defense of the natural resources and the people and to the stewardship and protection of the resources of the greater San Joaquin Valley, including air and water quality, the preservation of agricultural land, and the protection of wildlife and its habitat.

**WHEREAS,** Ardagh Glass Inc. ("Ardagh") operates a glass manufacturing facility, located at 24441 Avenue 12, Madera, California, 93637 (the "Facility"), and Ardagh is directly owned 100% by Ardagh Holdings USA Inc., which is an indirect wholly owned subsidiary of Ardagh Group S.A., a corporation organized under the laws of Luxembourg;

**WHEREAS,** the Facility operates under a permit issued pursuant to Title V of the Clean Air Act, 42 U.S.C. §§ 7661-7661f, by the San Joaquin Valley Air Pollution Control District ("District") ("Title V Permit");

**WHEREAS,** on March 18, 2022, SJR/WRC, POW, and CVSEN (collectively, "Plaintiffs") sent a notice of intent to file suit ("Notice Letter") to Defendants, registered agent, and the Facility's plant manager, as well as the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Officer of the

California Air Resources Board ("CARB"), Governor Gavin Newsom, and the Regional Administrator of EPA Region IX, for what Plaintiffs alleged were violations of the Clean Air Act, 42 U.S.C. § 7401 *et seq.* (the "Act") and the Title V Permit occurring at the Facility;

WHEREAS, on May 18, 2022, Plaintiffs filed a complaint against Defendants in the Eastern District of California. Dkt. No. 1 ("Complaint");

WHEREAS, the Complaint alleges that Defendants violated and are violating the Title V Permit, District rules, and the Act, at the Facility;

WHEREAS, Defendants deny the allegations set forth in the Notice Letter and Complaint as set forth in Defendants' Answer filed in this action. Dkt. No. 10 ("Answer");

WHEREAS, Plaintiffs and Ardagh (collectively "Settling Parties" and individually "Party") agree that it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolve the allegations set forth in the Notice Letter and Complaint, or any claims relating to or arising from the same, whether known or unknown, without further proceedings; and

WHEREAS, all actions taken by Ardagh pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND IT IS ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 304(a) of the Act, 42 U.S.C. § 7604(a).

2. Venue is appropriate in the Eastern District of California pursuant to Section 304(c)(1) of the Act, 42 U.S.C. § 7604(c)(1), because the Facility at which the alleged violations are taking place is located within this district.

3. The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 304 of the Act, 42 U.S.C. § 7604.

4. At the Settling Parties' request, the Court shall retain jurisdiction over this action, even though it has been dismissed with prejudice, for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, until such time that the Court terminates the Consent Decree.

## I.   OBJECTIVES

5. It is the express purpose of the Settling Parties through this Consent Decree to further the objectives of the Act and to resolve all issues alleged, or that could have been alleged, by Plaintiffs in the Notice Letter and Complaint, which relate to the use and operation of any continuous emissions monitoring systems ("CEMS") and pollution control technology, including the electrostatic precipitator ("EP") and scrubber, at the Facility and unauthorized exceedances of any emissions limits in the Title V Permit.

6. In light of these objectives and as set forth fully below, Ardagh agrees to comply with the provisions of this Consent Decree.

## II.   AGENCY REVIEW AND CONSENT DECREE TERM

### A.   Agency Review of Consent Decree

7. <u>Agency Review</u>. Plaintiffs shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Settling Parties, for agency review consistent with 42 U.S.C. § 7604(c)(3). The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Ardagh.

8. In the event that the Federal Agencies object to the entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies and modify the Consent Decree, if necessary. If the Settling Parties do not agree to a revision to the Consent Decree to respond to the issue(s) raised by the Federal Agencies within twenty (20) business days, then the Consent Decree

shall be submitted to the Court without such revision, and the Settling Parties shall inform the Court of the issue(s) raised by the Federal Agencies and the Settling Parties' decision not to modify the Consent Decree in response to such issue(s).

9. <u>Entry of Consent Decree</u>. Following expiration of the Federal Agencies' 45-day review period, the Consent Decree may be entered by the Court.

**B.** **Effective Date and Term of Consent Decree**

10. <u>Effective Date</u>. The Effective Date of this Consent Decree shall be the date of entry by the Court. All obligations under this Consent Decree shall begin on the Effective Date, unless otherwise stated in this Consent Decree.

11. <u>Termination Date</u>. This Consent Decree shall terminate on July 1, 2026, after which any and all obligations identified in this Consent Decree that are continuing in nature shall cease.  However, if a Party has invoked Dispute Resolution in accordance with Section VI of this Consent Decree, and such Dispute Resolution has not yet concluded when the Consent Decree would otherwise terminate, then the Dispute Resolution process shall continue until i) the Party invoking Dispute Resolution chooses to discontinue the Dispute Resolution process, ii) written notice is provided by the Party that invoked Dispute Resolution that the dispute has been fully resolved, which shall be issued promptly by such Party upon the resolution of the dispute, or iii) the

12.  orders that the dispute is resolved.

**III.   IMPROVEMENTS TO FACILITY OPERATIONS**

13. The Settling Parties agree and acknowledge that the Facility is regulated by state and federal agencies by the Title V Permit and that this Consent Decree cannot require Ardagh to take actions that are not allowed by the Facility's Title V Permit, any other permits, or any other applicable rules, regulations, or laws. Accordingly, Ardagh shall not have any obligation to implement any improvements described in this Section to the extent such actions are subsequently determined by the District to be contrary to applicable rules, regulations, or laws.

**A.     Actions Related to the Continuous Emissions System (CEMS)**

14. <u>Sample Filter and Screen</u> - Within ninety (90) days of the Effective Date, Ardagh shall assess all sample lines associated with all of the CEMS, ensure during that assessment they are all free of debris, and shall install sample filters and screens if not currently present to prevent any future debris in any of the sample lines attached to each and every CEMS analyzer.

15. <u>High Data Availability Server</u> – By October 1, 2024, Defendant shall install a high data availability server to the CEMS network to improve environmental data retention.

16. <u>Replacement of CEMS and Certification</u> – By April 1, 2026, Defendant shall replace and complete certification of all CEMS in Furnace 1, Furnace 2, EP inlet, EP outlet, and probes.

**B.     Actions Related to the EP**

17. <u>Annual Inspections of the EP</u> - Upon the Effective Date, Ardagh shall continue to conduct annual inspections of the EP.

    a.   Ardagh shall make any modifications or undertake any corrective actions necessary to repair any deficiencies found during the annual inspection within ninety (90) days after the completion of the inspection and/or in connection with existing scheduled maintenance events or end-of-year regularly scheduled maintenance, unless Ardagh is unable to obtain replacement parts for whatever reason, including supply chain delays.  In the event that Ardagh encounters the inability to obtain replacement parts despite all reasonable efforts, including supply chain delays, Ardagh shall repair any deficiencies involving such delayed parts within ninety (90) days after Ardagh or its repair contractor is able to obtain such parts.

    b.   Ardagh shall document each modification and corrective action, including the findings of each inspection and the responses taken and dates completed. Ardagh shall make these documents available to Plaintiffs within twenty (20) days upon request, not to exceed more than two (2) requests per year.

18. <u>Internal Quarterly Operational Report</u> – As of the Effective Date, Ardagh shall prepare a quarterly report of EP operations and provide such report to Plaintiffs by the 15th day of the month following the end of each calendar quarter. The report shall contain: (i) the results of all internal inspections conducted along with any deficiencies noted and follow-up corrective actions and a schedule for implementation of the corrective actions; (ii) a record of the status of all outstanding corrective actions from previous time periods include from the last annual inspection; and (iii) the following operational parameters on an hourly average basis – the primary and secondary voltages, and the primary and secondary currents for each field. Item (iii) may be provided electronically only.

### C. Actions Related to Scrubber

19. Within 90 days of the Effective Date, Ardagh shall commit to maintaining at least two out of the three groundwater wells that provide water to its scrubber during the pendency of this Consent Decree. If maintaining two such wells is not possible and specifically results in scrubber malfunction or Title V Permit exceedance, Ardagh shall commit to curtailing production and the operation of the furnace to a degree and until such time as at least two wells are back online and/or the scrubber can be operated in compliance with the Title V Permit.

20. Within 90 days of the Effective Date, Ardagh shall conduct training of its staff to aim to ensure that there is sufficient quantity of scrubber reagent available at the Facility in order to avoid any interruption to proper scrubber operation.

21. By October 1, 2024, Ardagh shall replace the atomizing nozzles in the scrubber.

### D. Actions Related to Ductwork

22. Within 90 days of the Effective Date, Ardagh shall include an assessment of furnace ductwork in their annual maintenance plan, which shall include selecting and retaining an outside expert or consultant to conduct a condition assessment of all ductwork and all ductwork joints beginning from each of the furnaces and through to the stacks, especially for any air leaks or other damage to ductwork. The consultant

shall be an independent, qualified, third-party, external consultant. Ardagh shall provide the annual assessment to Plaintiffs within twenty (20) days of a written request.

23. Throughout the term of this Consent Decree, Ardagh shall conduct an annual assessment of the ductwork.

24. In connection with this annual assessment, the consultant shall identify corrective actions that Ardagh should take to ensure the ductwork is properly maintained and does not leak if the consultant in its sole discretion believes that such actions are necessary ("Ductwork Corrective Actions"). The consultant shall estimate the time reasonably necessary to implement the Ductwork Corrective Actions.

25. Ardagh shall implement all Ductwork Corrective Actions in accordance with the schedule identified by the consultant, which shall not exceed 180 days after identification of the Ductwork Corrective Actions unless Ardagh is unable to obtain replacement parts for whatever reason, including supply chain delays.  In the event that Ardagh encounters the inability to obtain replacement parts despite all reasonable efforts, including supply chain delays, Ardagh shall repair any deficiencies involving such delayed parts within ninety (90) days after Ardagh or its repair contractor is able to obtain such parts.  Ardagh must provide written documentation to Plaintiffs demonstrating all reasonable efforts made in procuring the necessary replacement parts, no later than 180 days after identification of the Ductwork Corrective Actions that are needed.  If Plaintiffs do not agree all reasonable efforts have been made, they may avail themselves of the Dispute Resolution provisions contained in Section VI.

**E.    Actions Related to the EP Electrical System**

26. By October 1, 2024, Ardagh shall recondition all high voltage field electrical connections relevant to the EP electrical system.

27. By October 1, 2025, Ardagh shall inspect, clean, and rebuild and/or service, as needed, all high voltage boxes relevant to the EP electrical system.

### F.      Upgrades to Furnace 2 Burners

28. By April 1, 2025, Defendant shall upgrade the Furnace 2 burners to include a Maxon Low NOx FHR (replacing the Eclipse Primefire 400s).

### G.      Upgrades to the Compressed Air System

29. By April 1, 2025, Defendant shall replace the air dryer.

30. By April 1, 2025, Defendant shall service the rotary screw compressor.

### H.      Upgrades to the Computer System

31. By April 1, 2026, Defendant shall upgrade the computer systems associated with the EP and Scrubber pollution controls at the Facility. This shall include replacing the system PC and upgrading the programmable logic controller software.

### I.      Staffing, Training, and Maintenance

32. Staffing - Within ninety (90) days of the Effective Date, Ardagh shall assign, and at all times during the duration of the Consent Decree shall employ, a full-time employee or employees, to the extent that multiple employees with different experiences or qualifications or across corporate divisions in Ardagh's sole discretion may be necessary on a part- or full-time basis, to: (i) ensure compliance with each and every provision of the Title V Permit and this Consent Decree, including but not limited to ensuring the proper operation and maintenance of the CEMS, EP, and scrubber; (ii) implement the preventative maintenance plan and the training program; (iii) oversee contractors; and (iv) ensure inventory of necessary components, spare parts, or reagents needed for the EP and the scrubber. Ardagh shall identify this person(s) to Plaintiffs, once appointed, assigned, or re-assigned, within 90 days of the Effective Date.

33. Preventive Maintenance Program - Within ninety (90) days of the Effective Date, Ardagh shall review, modify as needed, and submit to Plaintiffs a copy of the Facility's preventive maintenance program for all pollution control technologies at the Facility, which are defined as the scrubber, EP, CEMS, and any of the appurtenant equipment (such as ductwork, dampers, instrumentation probes, data acquisition systems, etc.) of the foregoing. The preventive maintenance program shall include but

not be limited to all required manufacturers' preventive maintenance requirements, on a weekly, monthly, quarterly, annual, and other frequency, as appropriate. The preventive maintenance program shall include the annual inspections and quarterly reports of the EP in Paragraphs 16-17 above and quarterly audits of pollution control technology to ensure preventative maintenance tasks, as defined above, are completed as documented.  Ardagh shall log and retain records of implementation of the preventative maintenance program. Ardagh shall make these documents available to Plaintiffs within twenty (20) days upon request, not to exceed more than two (2) requests per year.

34. <u>Training Program</u> - Within ninety (90) days of the Effective Date, Ardagh shall review, modify as needed, and submit to Plaintiffs a training program for all employees responsible for any aspect of the regulatory permit compliance and pollution control, as defined in Paragraph 31 above, at the Facility ("Responsible Employees"). The training program shall aim to ensure that all Responsible Employees have all necessary information to properly maintain the pollution control technology and understand all obligations associated with Title V permit compliance, including Ardagh's obligations to timely notify and respond to breakdowns. The training shall aim to ensure that there is a primary and a backup Responsible Employee associated for implementing Ardagh's compliance obligations under its Title V permit.  Ardagh shall train any new Responsible Employee within thirty (30) days of start of employment. Ardagh shall conduct an annual refresher training for every Responsible Employee. Ardagh shall keep a log of all training meetings, including each Responsible Employees' name and title. Ardagh shall make the training logs available to Plaintiffs within twenty (20) days upon request, not to exceed more than two (2) requests per year.

**IV.    Compliance Monitoring and Reporting**

35. <u>Annual Report</u>. On June 1 of each year during the term of the Consent Decree, Ardagh shall submit a report ("Annual Report") to Plaintiffs that (1) describes the measures Ardagh has taken to comply with Section III of the Consent Decree, (2) lists

the deviations and breakdowns related to the CEMS and pollution control technology reported to the District and variances granted by the District, during the year, and (3) summarizes the actions Ardagh has taken or plans to take to address any breakdowns, deviations, and the conditions underlying the need for any variance during the previous year, including an implementation schedule for any planned action.

36. <u>Site Inspection</u>. Plaintiffs may conduct one site inspection ("Site Inspection") per calendar year during the term of this Consent Decree, for the purpose of assessing compliance with this Consent Decree. Plaintiffs will provide Ardagh with thirty (30) days' notice to conduct a Site Inspection, and Plaintiffs and Ardagh shall work together to schedule a Site Inspection on a convenient date within thirty (30) days, or a date mutually agreed upon thereafter. This Site Inspection shall be governed by the terms of that certain Site Inspection Protocol signed by Plaintiffs' representatives in or around August 2022. In Plaintiffs' notice requesting a Site Inspection, Plaintiffs shall identify the person or persons who will attend on behalf of Plaintiffs.

37. <u>Document Provision</u>. During the term of this Consent Decree, Ardagh shall notify and submit documents to Plaintiffs as follows:

a. Ardagh shall provide Plaintiffs a copy of all deviation or breakdown reports that are furnished to the District, all written communications related to compliance with the Title V Permit with the District, and all applications for renewal or amendments to the Title V Permit that are submitted to the District during the term of the Consent Decree. Ardagh shall email electronic copies of such documents to Plaintiffs at the relevant notice addresses identified below within ten (10) business days of submittal to the District.

b. Any notices of violation or written communications related to the Facility's compliance with the Title V Permit received by Ardagh from the District shall be sent to Plaintiffs within ten (10) business days of receipt by Ardagh. Ardagh shall email electronic copies of such documents to Plaintiffs at the relevant notice addresses identified below.

38. <u>Compliance Monitoring</u>. Ardagh agrees to partially defray costs associated with Plaintiffs' monitoring of Ardagh's compliance with this Consent Decree in the amount of Twelve Thousand Five Hundred Dollars ($12,500.00). The payment shall be made within thirty (30) days of the Effective Date. The payments shall be made payable to Aqua Terra Aeris Law Group LLP, 4030 Martin Luther King, Jr. Way, Oakland, CA 94609, to be held in trust for Plaintiffs.

**V.   Environmental Mitigation, Litigation Fees and Costs, Stipulated Penalties, and Interest**

39. <u>Environmental Mitigation Project</u>:  To help remediate the alleged environmental harms resulting from allegations in the Complaint, Ardagh agrees to make a payment of one hundred thirty thousand dollars ($130,000.00) to the Rose Foundation for Communities and the Environment.  The payment shall be made within thirty (30) days of the Effective Date payable to the Rose Foundation, for projects aimed at reducing air pollution and the impact of air pollution in the San Joaquin Valley.  Payment shall be sent to the Rose Foundation for Communities and the Environment, 201 4th Street, Suite 102 Oakland, CA 94607. Ardagh shall provide Plaintiffs with a copy of such payment.

40. <u>Fees and Costs</u>: Ardagh agrees to pay a total of one hundred fifty thousand dollars ($150,000.00) to Plaintiffs to partially reimburse Plaintiffs for their investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit and negotiating a resolution of this matter. The payment in full shall be made within thirty (30) days of the Effective Date and delivered by certified mail or overnight delivery made payable to Aqua Terra Aeris Law Group LLP, 4030 Martin Luther King, Jr. Way, Oakland, CA 94609.

41. <u>Interest on Late Payments</u>:  Ardagh shall pay interest on any payments, fees, or costs owed to Plaintiffs under this Consent Decree that Plaintiffs have not received within sixty (60) days of the due date. The interest shall accrue starting the first day

after the payment is due and shall be computed according to 28 U.S.C. § 1261, unless Dispute Resolution has been invoked by Ardagh under Section VI, in which case interest shall not start to accrue until the conclusion of Dispute Resolution. Interest on late payments shall be made payable to Aqua Terra Aeris Law Group LLP and sent to the address listed in Paragraph 39.

**VI.    Dispute Resolution**

42. This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt, until such time that the Court terminates the Consent Decree.

43. <u>Meet and Confer</u>. Either Party may invoke the dispute resolution procedures of this Section by notifying the other Party in writing of the matter(s) in dispute and of the disputing Party's proposal for resolution.  The Settling Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice to attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the meet and confer.

44. If the Settling Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in Paragraph 42, the Settling Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Eastern District of California.

45. In resolving any dispute arising from this Consent Decree before the Court, the Settling Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 304(d) of the Clean Air Act, 42 U.S.C. § 7604(d), and applicable case law interpreting such provisions.

## VII.   Mutual Release of Liability and Covenant Not to Sue

46. <u>Plaintiffs' Release</u>. Upon the Effective Date of this Consent Decree,  Plaintiffs on their own behalf and on behalf of their respective current and former officers, directors, members, employees, predecessors, successors, assigns, agents, attorneys, and other representatives, releases Ardagh and each of their current and former officers, directors, employees, shareholders, parents, affiliates, agents, attorneys, consultants, representatives, predecessors, successors, and assigns, and each of their officers, directors, members, employees, shareholders, parents, affiliates, agents, attorneys, consultants, and other representatives, past and present, from, and waives, any and all claims of violations of the Title V Permit  or the Act, whether or not alleged in the Notice Letter and Complaint, known or unknown, at the Facility, occurring prior to the termination of this Consent Decree, including all claims for injunctive relief, penalties, fees (including without limitation fees of attorneys, experts, and others), liabilities, costs, expenses or any other sum incurred or claimed.

47. <u>Ardagh's Release</u>. Upon the Effective Date of this Consent Decree, Ardagh, on their own behalf and on behalf of their current and former officers, directors, employees, agents, attorneys, consultants, representatives, parents, subsidiaries, predecessors, successors and assigns, and their agents, attorneys, and other representatives, releases Plaintiffs (and their current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and their agents, attorneys, and other representatives) from, and waives, any and all claims which relate to the allegations in the Notice Letter and/or the Complaint, or which otherwise relate to or arise from or pertain to this action, including all claims for injunctive relief, penalties, expert fees, liabilities, costs, expenses or any other sum incurred or claim.

48. <u>Dismissal</u>. Provided that the Court retains jurisdiction over this as requested in Paragraph 4, Plaintiffs shall dismiss the Complaint in its entirety, with prejudice,

immediately after the Court approves and enters this Consent Decree, pursuant to Federal Rule of Civil Procedure 41(a)(2).

**VIII.  Miscellaneous Provisions**

49. <u>No Admission of Liability</u>. The Settling Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law, or liability, nor shall it be construed as an admission or denial of violation of any law, rule, or regulation. Compliance with this Consent Decree does not mean that Ardagh is complying with the Title V Permit, the Act, or any other law, rule, or regulation. Ardagh maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

50. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.

51. <u>Authority</u>.  The undersigned representatives for Plaintiffs and Ardagh each certify that they are fully authorized by the Party whom they represent to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

52. <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Title V Permit, the Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

53. <u>Full Settlement</u>.  This Consent Decree constitutes a full and final settlement of this matter.

54. <u>Integration Clause</u>.  This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written

agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

55. <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

56. <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent Decree and agree that it shall not be construed against the Party preparing it. The Consent Decree shall be construed as if the Settling Parties jointly prepared it, and any uncertainty and ambiguity shall not be interpreted against any one Party.

57. <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties and approved by the Court.

58. <u>Assignment</u>. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. Ardagh shall notify Plaintiffs within thirty (30) days of any successors or assignees.

59. <u>Force Majeure</u>. Neither of the Settling Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance is prevented or delayed due to a Force Majeure Event.

a. For purposes of this Consent Decree, a "Force Majeure Event" is any circumstance beyond the control of a Party, their contractors, or any entity controlled by the Party, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, major industrial accident, pandemic, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency; or any suspension of glass manufacturing operations, unrelated, in whole or in part, to the foregoing factors, that

is expected to, intended to, or does, last for more than three (3) months. A Force Majeure Event shall not include normal inclement weather, inability to pay, or employee negligence.

b. Ardagh shall provide notice to Plaintiffs orally or by electronic or facsimile transmission as soon as practicable, but not later than ten (10) business days after the time Ardagh first knew, or by the exercise of due diligence, should have known, that a claimed Force Majeure Event would affect Ardagh's ability to comply with this Consent Decree. The notice shall describe the event and the length of any extension sought.

c. Unless Plaintiffs have invoked Dispute Resolution related to the claimed Force Majeure Event, as defined by this paragraph, the time for Ardagh to perform the affected requirements shall be extended for the time necessary to complete those obligations, provided, however, that no Force Majeure Event shall extend the time period for the payments due under this Consent Decree. Failures resulting from a Force Majeure Event shall not be considered a breach of this Consent Decree, provided Ardagh complies with the terms of this paragraph.  However, the term of this Consent Decree shall be extended by the time period for which compliance with this Consent Decree is excused due to a Force Majeure Event.

d. If Plaintiffs object to Ardagh's assertion that a Force Majeure Event, as defined by this paragraph, has occurred or does not agree to the length of the extension of time sought by Ardagh, then Plaintiffs may invoke Dispute Resolution under Section VI of this Consent Decree. In any such dispute, Ardagh bears the burden of proving, by a preponderance of the evidence, that each claimed force majeure event is a Force Majeure Event, that Ardagh gave the notice required by this paragraph, that the Force Majeure Event caused any failure to comply or delay in compliance with an obligation of this Consent Decree that Ardagh claims was attributable to that event, and that Ardaghs exercised reasonable efforts to prevent or minimize any failure or delay in compliance caused by the event.

60. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, to the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by U.S. mail to the following addresses:

<u>To Plaintiffs:</u>

      San Joaquin Raptor/Wildlife Rescue Center
      Protect Our Water
      Central Valley Safe Environment Network
      Attn: Lydia Miller
      PO Box 778
      Merced, CA 95341
      Email: sjrrc@sbcglobal.net
            protectourwater@sbcglobal.net
            cvsen@sbcglobal.net

*With a copy to:*

      Matthew Maclear & Erica Maharg
      Aqua Terra Aeris Law Group LLP
      4030 Martin Luther King Jr. Way
      Oakland, CA 94609
      Email: mcm@atalawgroup.com, eam@atalawgroup.com

<u>To Ardagh:</u>

      Ardagh Glass Inc.
      10194 Crosspoint Blvd, Suite 410
      Indianapolis, IN 46256
      Email:     Ty.Sibbitt@ardaghgroup.com
              Richard.Tomicek@ardaghgroup.com

*With a copy to:*

      E. Sean Griggs & Alexander J. Bandza
      Barnes & Thornburg LLP
      11 South Meridian Street
      Indianapolis, IN 46204
      Email:     sean.griggs@btlaw.com
              abandza@btlaw.com

Communications shall be deemed submitted immediately upon sending if transmitted

by email and five (5) days after the date they are sent (as indicated by postmark or other applicable information) by first class mail or immediately after acknowledgement of receipt via email by the receiving Party. Any change of address shall be communicated in the manner described above for giving notices.

61. If for any reason the District Court should decline to approve this Consent Decree in the form presented, the Settling Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the District Court. If the Settling Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and California Evidence Code section 1152.

62. The Settling Parties hereto enter into this Consent Decree and submit it to the Court for its approval and entry as a final judgment.

IN WITNESS WHEREOF, the undersigned have executed this Consent Decree as of the date first set forth below.

Date: May _____, 2024          SAN JOAQUIN RAPTOR/WILDLIFE
                                RESCUE CENTER, PROTECT OUR WATER,
                                and CENTRAL VALLEY SAFE ENVIRONMENT
                                NETWORK


                                [Signature documented at Doc. 32-1]

                                Lydia Miller
                                Executive Director

1  Date: May   _____, 2024      ARDAGH GLASS INC.

2

3                       [Signature documented at Doc. 32-1]

4                       Jason Ty Sibbitt, Esq.
                          Associate General Counsel

5

6  *Approved as to form:*

7

8  Date: May   _____, 2024      AQUA TERRA AERIS LAW GROUP LLP

9

10                      [Signature documented at Doc. 32-1]

11                     Matthew C. Maclear
                     Erica A. Maharg

12                     Attorneys for Plaintiffs

13

14

15  Date: May   _____, 2024      BARNES & THORNBURG, LLP

16

17                      [Signature documented at Doc. 32-1]

18                     E. Sean Griggs
                     Alexander J. Bandza

19                     Attorneys for Defendant ARDAGH GLASS, INC.

20

21  IT IS SO ORDERED.

22    Dated:   **July 24, 2024**

23                              UNITED STATES DISTRICT JUDGE

24

25

26

27

28

[PROPOSED] CONSENT DECREE